The prisoner Jabel B. Register is indicted and convicted of murder in the first degree, and H. B. Register, his father, is indicted in the same bill and convicted of being an accessory before the fact. The evidence of the State, if believed, showed that on Saturday afternoon, 28 March, 1903, Jabel met Cross Edmundson and told him his father (H. B. Register ) wished to see him; that together they went up to the house of H. B. Register, who told them that Jim Staley, a colored man staying with Jesse Soles, had between $1,000 and $2,000, and he wanted them to "hold up Jim Staley and get his money, and kill him if necessary"; that H. B. Register furnished them with two guns he had *Page 568 
ready and some canned goods in a two sack, and under H. B. Register's direction they left about 10:30 at night to go down to commit the robbery; that the place where Jim Staley resided being some miles off, after traveling part of the way, they lay down in the woods and slept till next morning, when they resumed their journey and then sent the day near a still-house till about dusk, when they started to Jesse Soles' house, where Jabel Register went up to the window and fired both barrels through the window into the house, killing Jesse Soles and Jim Staley; he then entered the room, remained a while, acme out and left; the house was soon afterwards in a blaze, and Cross Edmundson, when three (749) or four miles away on their return, asked Jabel what it meant, and after some hesitation he replied that "he reckoned his papa and Jesse Soles were having a settlement." The only direct evidence is that of Cross Edmundson, the accomplice, which is full, minute, and dramatic in its details. There were witnesses and proof of sundry circumstances which, if believed, strongly corroborated Edmundson at sundry points in his narrative.
The prisoners were tried at a special term, commission reciting in the ordinary form that there was such an accumulation of criminal business as rendered a special term necessary. The Code, sec. 914. The prisoners moved for a continuance on the found that this bill being found at that special term, it was not part of the accumulation of criminal business specified in the commission as a reason for ordering such special term, and hence the judge had no power to try them. The motion was denied, and the prisoners excepted.
The first exception is to the refusal of this motion and is without merit. The power of the Governor to order special terms is not restricted to instances where there is accumulation of business, nor when such fact is recited as a reason in the commission is the power of the judge restricted to the trial of indictments found before that term. The Code, sec. 913; S.v. Lewis, 107 N.C. 967; 11 L. R., 105; S. v. Turner, 119 N.C. 841.
The second exception is to the refusal of the motion to quash the venire on these facts: The judge ordered a special venire of 200, and the names were drawn from the box, in open court, as provided by section 1739 of The Code, which provides that "the names so drawn (being freeholders) shall constitute a special venire.' The court undertook to ascertain whether those whose names were so drawn were freeholders or not, "and ascertained, form the tax list of the county, the officers of the (750) court, ad other sources, that 37 (of 237 names so drawn), were not freeholders," and the names of these 37 were not placed on the venire, leaving 200. The case on appeal further says that the officers *Page 569 
and others from whom such information was had were not sworn, but that it appeared that the names of none of the 37 were on the tax list of 1902 as owners of realty; that there was no suggestion or evidence that any one of them was a freeholder; that there was no objection or exception to this mode of proceeding, nor any request that the officers or other persons giving information be sworn, and the judge found at the time as a fact that none of the 37 was a freeholder and that the 200 were freeholders. This finding of fact is binding on us and is fatal to the exceptions. Besides, the prisoners made no exception at the time, nor can they except to the rejection of a juror, since their right is "to reject, not to select," an moreover, they are in no position to complain, for they did not exhaust their peremptory challenges. The practice of drawing the venire from the box in open court was specially commended in S,. v. Brogden, 111 N.C. 656. Other cases are S. v. Moore, 120 N.C. 570; S. v. Dixon, 131 N.C. 808;S. v. Utley, 132 N.C. at p. 1032. In S. v. Cody, 119 N.C. 908, 56 Am. St., 692, the Court said: "It is not error in the trial judge, when ordering a special venire, to direct the sheriff to summon only freeholders," and in the present case the judge ascertained that fact himself instead of leaving it to the sheriff to determine. There was and could be no prejudice to the prisoners in what was done, but it will always be better practice to sear the officers and others giving information on such occasions.
The able counsel of the prisoners who entered these two exceptions doubtless did so out of abundant caution, not relying upon them himself, but being uncertain "how they might strike the Court." (751)
The third exception is to the indifference to two jurors who the court, as the "trier of the facts," found as a fact were indifferent. Such finding is not reviewable. S. v. Green, 95 N.C. 611; S. v. Collins,70 N.C. 241; 16 Am. Rep., 771.
The fourth, fifth, and sixth exceptions are omitted from the brief of the prisoner's counsel, and therefore we take it they are abandoned; Rules 32 and 33, 131 n. C., 831; but at any rate they are without merit. The fourth exception was to the trial of H. B. Register by the special venire, on the ground that a special venire can be drawn only in capital cases, but The Code, sec. 977, provides that the principal felon and an accessory before the fact may be indicted and tried together. Further, the jury had already been passed upon and each juror accepted before the objection was made and without exhausting the peremptory challenges. It is a conclusive presumption in such case that the jury is unobjectionable. S. v. Pritchett,106 N.C. 667; S. v. Potts, supra; S. v. *Page 570 Freeman, 100 N.C. 429; S. v. Jones, 97 N.C. 469. The fifth and sixth exceptions were to the proper rejection of incompetent hearsay evidence.
The seventh exception was to the evidence of cross Edmundson, in his statement before the justice of the peace, that on the aforesaid 28 March, 1903, H. B. Register had said that Bill Soles, brother of Jesse Soles, and who lived near him, had two or three thousand dollars, and it would be no trouble to get it; that he could take two or three men and go thee in his absence and make his wife get it. This was competent, for the testimony showed that it was part of the conversation in which h. B. Register was giving instruction as to "holding up' and robbing (752) "the negro staying with Jesse Soles, who had between one and two thousand dollars." Edmundson had detailed the other part of the conversation, and it was proper to admit this. Besides, the intent to commit robbery was involved in this trial, and, this being so, evidence of different offenses of the same kind would be competent. S. v.Weaver, 104 N.C. 758; S. v. Parish, ib., 679; S. v. Walton, 114 N.C. 783; McLain Crim. Law, secs. 415, 416. This declaration of H. B. Register was competent against him as a part of the res gestae at the time he procured the witness to aid his son to commit murder for the sake of the robbery. The eighth exception is omitted from the brief of prisoners' counsel and is clearly without merit, being to the admission against H. B. Register only, of a conversation between him and Edmundson a week after the murder. It strongly tended to show H. B. Register's connection with the crime and was corroborative of Edmundson's testimony. S. v. Staton,114 N.C. 813.
One Richardson testified that Jabel Register bought some canned goods at his store between sunset and dark on Saturday, 28 March, 1903, the day before the killing. Edmundson had testified that he and Jabel had similar canned goods furnished by H. B. Register on starting out that night. For the purpose of aiding Richardson in fixing the date, and for that purpose alone, he was properly allowed to state that it was on Tuesday or Wednesday that he heard of Jabel Register and Edmundson being at Nelson Toon's, where it was in evidence they had spent the night of the murder. This was the ninth exception, but it is not urged as error in the brief.
The tenth, eleventh, twelfth, and thirteenth exceptions are essentially one, as stated in the brief of prisoners, and are directed the admission, as evidence against H. B. Register only, of a letter shown to be in his handwriting, tending to show an attempt to manufacture or suggest statements that a witness should make in his interest. The (753) fourteenth exception is omitted from brief of prisoners, and, besides, *Page 571 
requires no discussion, which last is also true of the fifteenth exception, which is to the exclusion of the bill of indictment against Cross Edmundson. It would have shown merely, if admitted and had been competent, that he had been charged by the grand jury with the murder, and his whole testimony went directly to establish his participation therein, being present aiding an abetting. The court charged as requested: "the jury must carefully consider the testimony of Cross Edmundson and give it such weight as it may be entitled to; he stands before the jury as an accomplice,' but declined to; he stands "It is dangerous to act exclusively on the testimony of an accomplice, and the jury shall require confirmatory testimony of an accomplice, and to further charge that "The unsupported testimony of an accomplice, and must produce entire belief" in the minds of the jury before they can convict. This refusal is the basis of the sixteenth, seventeenth, and twentieth, twenty-first, twenty-fourth and twenty-fifth exceptions. In lieu thereof the court charged fully and carefully on "reasonable doubt" and told the jury that while they could convict upon the uncorroborated testimony of an accomplice, "they should be cautious in convicting" upon such evidence, and left to them, under proper instructions, the evidence offered in corroboration, carefully calling to their attention the effect of evidence offered only as corroborative, and distinguished its effect and application from substantive testimony. It has been often held that there may be a conviction upon the unsupported testimony of an accomplice, and the charge of the court, that while the jury can convict upon such testimony, yet they should be "cautious" in so doing, is quoted form S. v. Miller, 97 N.C. 484, and is in like with all our authorities.S. v. Rowe, 98 N.C. 629; S. v. Stroud, 95 N.C. 626; S. v.Haney, 19 N.C. 390; S. v. Wier, 12 N.C. 363. Here, indeed, there was much testimony tending to corroborate the testimony (754) of Edmundson.
The eighteenth and nineteenth exceptions, in regard to the modification of the prayer as to the alibi attempted to be proved by Jabel Register, cannot be sustained. The prayer as amended is a correct statement of the law. The twenty-second exception is a "broadside" exception to the charge, and cannot be considered. Besides, the charge is in itself very full, careful, and impartial, and the prisoners have no cause to complain. There is no twenty-third exception in the record of the briefs.
The prisoners also moved this Court for a new trial for newly discovered testimony, but such motion can only be made in civil actions. Our precedents are uniform that this Court has no jurisdiction to entertain such motion in criminal actions. S. v. Jones, 69 N. c., 16; S. *Page 572 v. Starnes, 94 N.C. 981; S. v. Gooch, ib., 1006; S. v. Starnes, 97 N.C. 423;S. v. Rowe, 98 N.C. S. v. Edwards, 126 N.C. 1051; S. v. Council,129 N.C. 513.
After the fullest consideration we find
No error.
Cited: Currie v. R. R., 135 N.C. 537; Peoples v. R. R., 137 N.C. 98;S. v. Blackley, 138 N.C. 625; Jones v. Ballou, 139 N.C. 527; Alley v.Howell, 141 N.C. 116; S. v. Lilliston, ib., 865; S. v. Bohanon,142 N.C. 697; S. v. Turner, 149 N.C. 522; Medlin v. Simpson,144 N.C. 399; S. v. Banner, 149 N.C. 522; S. v. Spivey,151 N.C. 678; S. v. Price, 158 N.C. 648; S. v. Ice Co.,166 N.C. 404; S. v. Johnson, 169 N.C. 311; S. v. Wood,175 N.C. 815; S. v. Bailey, 179 N.C. 726.
(755)