STATE OF NORTH CAROLINA v. JOYCE BARNHILL VIETTO

No. 18

(Filed 16 March 1979)

**Schools § 14— compulsory school attendance law —failure to show private school not "approved"**

Defendant's motion for directed verdict should have been allowed in this prosecution for violating the N.C. compulsory school attendance law, G.S. 115-166, where the evidence showed that defendant removed her twelve-year-old child from the public schools and enrolled her in Learning Foundations of Wilmington, and the only evidence that Learning Foundations was not a non-public school approved by the State Board of Education was inherently speculative.

Justice HUSKINS concurring.

ON petition for discretionary review of the decision of the Court of Appeals, 38 N.C. App. 99, 247 S.E. 2d 298 (1978) (*Erwin, J.,* concurred in by *Parker* and *Clark, JJ.*), which found no error

in defendant's trial in the 14 November 1977 Criminal Session of NEW HANOVER County Superior Court, *Webb, J.* presiding.

The defendant was charged, in an indictment proper in form, with violating G.S. 115-166,[1] North Carolina's compulsory school attendance law.

At trial the evidence for the State tended to show the following:

During the 1976-77 school year, defendant's daughter, Jayne Vietto, was twelve years old and was in the sixth grade at Tileston School in Wilmington, North Carolina. She attended school regularly until 19 April 1977. On that date defendant called Mr. George Tally, the principal of Tileston School, and complained about her daughter's teacher who had been frequently absent from school throughout the year and who had told some parents of Jayne's classmates not to allow their children to associate with her daughter. The defendant appeared very upset.

On 21 April 1977 the defendant went to Tileston School and told Mr. Tally she was removing Jayne from that institution. Mr. Tally offered to transfer Jayne to another sixth grade classroom, but the defendant refused on the ground that "she felt that the teachers would not be fair to her child because the teachers sort of stuck together." On 27 May 1977 Mr. Tally wrote defendant a letter informing her of the compulsory school attendance law. The letter also stated that the attendance counselor would be contacted unless the law was complied with immediately.

---

1. G.S. 115-166. Parent or guardian required to keep child in school; exceptions.—Every parent, guardian or other person in this State having charge or control of a child between the ages of seven and 16 years shall cause such child to attend school continuously for a period equal to the time which the public school to which the child is assigned shall be in session. No person shall encourage, entice or counsel any such child to be unlawfully absent from school.

The principal, superintendent, or teacher who is in charge of such school shall have the right to excuse a child temporarily from attendance on account of sickness or other unavoidable cause which does not constitute unlawful absence as defined by the State Board of Education. The term "school" as used herein is defined to embrace all public schools and such nonpublic schools as have teachers and curricula that are approved by the State Board of Education.

All nonpublic schools receiving and instructing children of a compulsory school age shall be required to keep such records of attendance and render such reports of the attendance of such children and maintain such minimum curriculum standards as are required of public schools; and attendance upon such schools, if the school refuses or neglects to keep such records or to render such reports, shall not be accepted in lieu of attendance upon the public school of the district to which the child shall be assigned: Provided, that instruction in a nonpublic school shall not be regarded as meeting the requirements of the law unless the courses of instruction run concurrently with the term of the public school in the district and extend for at least as long a term.

Mr. Tally testified that after 19 April 1977 Jayne Vietto did not attend another public school or private school approved by the State Board of Education. He based this conclusion only on the fact that "[n]o other school, public or private, contacted me at any time after April 19, 1977 and before June 9, 1977, requesting the transcript of records of Jayne Vietto's grades." The witness then went on to explain, however, that the transfer procedure normally is implemented by the child's parent or guardian and not by the new school.

Mrs. Hilda Worth, the attendance counselor for New Hanover County Schools, testified that she visited the defendant at her home on 28 April 1977 to try and "work out the problem." The defendant informed Mrs. Worth that she had enrolled Jayne in Learning Foundations and "would not consider changing that." The defendant refused to talk with Dr. Bellamy, the Superintendent of New Hanover County Schools.

On 29 April 1977, after talking with Dr. Bellamy, Mrs. Worth wrote defendant a letter informing her she was violating the compulsory school attendance law because "Dr. Bellamy stated that Learning Foundations, Inc., is not accredited by the State Board of Education." Another offer was made to place Jayne in a different classroom or a different school; however, the defendant refused.

Dr. Bellamy testified for the State. His testimony was mainly concerned with whether or not Learning Foundations of Wilmington was an approved nonpublic school within the meaning of G.S. 115-166. On direct examination, over defendant's objection, he stated that Learning Foundations was not a public or an accredited private school "as I interpret North Carolina law."

The evidence for the defendant tended to show the following:

The defendant testified that on 11 October 1976 she had called Mr. Tally, her daughter's principal, because her daughter Jayne was upset over her regular teacher's absence from school. At this time defendant asked Mr. Tally to transfer her daughter to another sixth grade classroom. On 19 April 1977 defendant's daughter was upset and crying after she got home from school. She had had fifteen different substitute teachers so far during that school year. The defendant testified that her daughter "not

only was not learning and covering the material but was not competent in what she was covering."

Defendant again called Mr. Tally, and she told him that she felt compelled to remove Jayne from Tileston School "to insure that my daughter was in a learning situation and that her emotional state improved." The defendant refused to have her daughter transferred to another sixth grade classroom because "I [the defendant] determined that it would not be in my child's best interest." The defendant made arrangements with the Learning Foundations to privately tutor her daughter in all her school subjects using the same books Jayne had been using in public school. Jayne attended Learning Foundations Monday through Friday for four hours a day until 8 June 1977.

Ms. Georgia Spiliotis, the director of Learning Foundations, testified that Jayne Vietto was individually tutored at that institution beginning in April of 1977. The girl was taught art, language, science, math and social studies, the same subjects that were taught in the sixth grade in public schools. Ms. Sue Collins, Jayne's tutor at Learning Foundations, testified that the girl "seemed much happier later on once she was working with me and this happiness was much greater than when she had first come in."

The jury found the defendant guilty of violating G.S. 115-166, the compulsory school attendance law. The judge sentenced the defendant to imprisonment in the county jail for thirty days. The sentence was suspended for one year on the condition that defendant pay court costs and a fine of fifty dollars. The defendant appealed. The Court of Appeals found no error in defendant's trial, and this Court granted her petition for discretionary review.

*Prickett & Scott by Carlton S. Prickett, Jr., and James K. Larrick for the defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Patricia B. Hodulik for the State.*

COPELAND, Justice.

The defendant contends the trial court erred in denying her motion for a directed verdict of not guilty at the close of all of the

evidence. We agree; therefore, the decision of the Court of Appeals must be reversed.

The trial judge correctly charged the jury that to convict the defendant of violating G.S. 115-166, the State must prove beyond a reasonable doubt that for the time period specified in the indictment, the defendant caused her child not to attend a public school *or a nonpublic one that had been approved by the State Board of Education*.[2] The State's proof that Learning Foundations was not an approved school within the meaning of G.S. 115-166 was insufficient to take this case to the jury.

The only evidence with any probative force relating to Learning Foundations' status came from State's witness Dr. Heyward Bellamy, Superintendent of New Hanover County Schools. He attempted to show that Learning Foundations had not been approved by the State Board of Education; however, he obviously had no real basis for his testimony. The witness took no part in the approval of nonpublic schools; under G.S. 115-166, the State Board of Education has the sole authority to do this. He stated that he had never checked to see if Learning Foundations was on the official list of approved schools, and he had not talked with anyone at that institution about its status. Although Dr. Bellamy recited certain requirements that must be met before a school is approved, he could not know whether Learning Foundations complied with these standards at the time in question because he had not visited that institution for ten or twelve years. In essence, the witness' whole testimony was based on the fact that *"[s]o far as I know* they [Learning Foundations] don't claim to be a school and have not filed the request with the State [Board of Education]." (Emphasis added.)

"When a motion is made for a judgment of nonsuit or for a directed verdict of not guilty, the trial judge must determine whether there is *substantial evidence* of every essential element of the offense." *State v. Davis*, 246 N.C. 73, 76, 97 S.E. 2d 444, 446

---

2. Apparently the State did not rely on G.S. 115-170 which states in pertinent part:

"The reports of unlawful absence required to be made by teachers and principals to the attendance counselor shall, in his hands, in case of any prosecution, constitute prima facie evidence of the violation of this Article and the burden of proof shall be upon the defendant to show the lawful attendance of the child or children upon an authorized school."

Although neither party to this lawsuit raised an issue concerning this provision, we note that it appears to violate the mandates laid down by the United States Supreme Court in *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975).

(1957) (Emphasis added.) *See also State v. Stewart*, 292 N.C. 219, 232 S.E. 2d 443 (1977). When ruling on such a motion, the judge must consider both competent and incompetent evidence that has been admitted at trial. *See, e.g., State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975). However, even when we consider all the evidence at this defendant's trial in the light most favorable to the State, *State v. Jones*, 280 N.C. 60, 184 S.E. 2d 862 (1971), we cannot find that the inherently speculative testimony of Dr. Bellamy constituted substantial evidence that Learning Foundations was not a nonpublic school approved by the State Board of Education. Consequently, defendant's motion for a directed verdict of not guilty should have been granted.

For the foregoing reason, we reverse the decision of the Court of Appeals and remand the case to that court with instructions to further remand it to the Superior Court of New Hanover County for entry of judgment dismissing the charge as of nonsuit.

Reversed and remanded.

Justice HUSKINS concurring.

If, as the evidence tends to show, defendant's child had had fifteen different substitute teachers during the school year, defendant was justifiably concerned that her daughter's progress in school was minimal at best. That defendant acted in good faith is shown by the fact that she "felt compelled to remove the child from public school to insure that the child was in a learning situation and that her emotional state improved," and then paid $90.00 per week for tutors to instruct her daughter in all her school subjects, using the same books that had been used in public school. All these facts indicate that defendant did not *wilfully* violate the general compulsory school attendance law. It is my view that there must be a wilful violation of the compulsory attendance law before a parent or guardian may be convicted under G.S. 115-166.

I fully concur in the decision dismissing this indictment.